NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND J. DONOVAN,<br><br>*Plaintiff*,<br><br>v.<br><br>DRAGADOS, S.A., DRAGADOS INVERSIONES USA, S.L., and NEWARK REAL ESTATE HOLDINGS, INC.,<br><br>*Defendants*. | Civil Action No. 09-409 (KSH)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

Defendant Raymond Donovan has raised objections to interim rulings by the Special Master, Hon. John E. Keefe, Sr. (ret.), and seeks a ruling from the Court that would expand Judge Keefe's jurisdiction. Dragados has filed opposition. The matter has been fully briefed. [D.E. 272; D.E. 277; D.E. 287.]

**I.    Background**

The Court writes for the parties. By way of brief background, Judge Keefe was appointed Special Master for the purpose of determining the reasonableness of legal fees sought by defendant Dragados under indemnification provisions in a Stock Purchase Agreement ("SPA") that this Court found to be enforceable against plaintiff Raymond Donovan after a lengthy bench trial. [*See* D.E. 249 ("Opinion"), p. 47.]

On July 18, 2013, Judge Keefe advised the Court by letter [D.E. 255] that the parties had agreed to a briefing schedule whereby Dragados would move by way of summary judgment on the issue of attorney's fees and costs, and Donovan would move on the issue of interest. The

1

Court signed the "So Ordered" portion of the letter, and the matter went forward before Judge Keefe.

On November 4, 2013, Donovan wrote Judge Keefe objecting to four declarations that Dragados submitted with its reply brief filed under the summary judgment procedure outlined in Judge Keefe's scheduling letter. On the same day, Donovan wrote Judge Keefe for permission to take a deposition of one of the declarants. Donovan also sought tax records from Dragados and related entities to determine any tax benefit that would have a bearing on the net amount of legal fees payable by Donovan. Dragados responded on November 13, 2013, and on November 22, 2013, Donovan submitted a lengthy reply.

Judge Keefe filed a Recommendation Regarding Plaintiff's Motion to Strike Certifications and Produce Tax Records on December 12, 2013. [Ex. A to Decl. of Craig A. Ollenschleger in Support of Donovan's Objections to Special Master's Recommendation Regarding Plaintiff's Motion to Strike Certifications and Produce Tax Records ("Recommendation").] On January 2, 2014, Donovan filed objections in this Court to Judge Keefe's recommendation. His application has a return date of February 3, 2014, the same day, according to Dragados, that Judge Keefe had set down for a hearing on factual disputes that have a bearing on how much Donovan owes Dragados as reasonable attorney's fees by operation of the indemnification provisions of the SPA. Throughout January the parties filed voluminous documents on the Court's docket which had previously been filed before Judge Keefe in connection with his charge as Special Master. Pertinent to the objections, Donovan filed a formal brief and declaration of counsel with attachments. Dragados filed a formal opposition brief with declaration and attachment, and Donovan filed a reply brief along with a reply declaration and attachment.

2

## II. Discussion

A deeper dive into the history of this case reveals why Donovan's objections to Judge Keefe's recommendation are unpersuasive. On February 1, 2013, toward the close of the bench trial, the Court indicated on the record that the issue of legal fees, something that Donovan earlier argued could and should be handled by way of motion practice, would be addressed after the Court ruled on liability. [*See* Ex. B to Decl. of Craig A. Ollenschleger in Support of Donovan's Objections to Special Master's Recommendation Regarding Plaintiff's Motion to Strike Certifications and Produce Tax Records.] At the same time the Court indicated it could appoint a Special Master to preside over the issue of the reasonableness of fees should it find Donovan liable under the indemnity provisions of the SPA to reimburse Dragados for fees it incurred in connection with the government investigation and settlement, and for fees it incurred in defending its rights under the SPA. [*Id.*]

By written opinion filed June 28, 2013, the Court found Donovan liable and appointed Judge Keefe Special Master. [Opinion, p. 47-48.] From the opinion:

> The Court is satisfied that the indemnification provision of the SPA contemplates recovery of both sets of fees and expenses and appoints Hon. John E. Keefe, Sr. (ret.) to serve as Special Master for the purposes of determining the attorneys' fees and costs incurred by Dragados. Judge Keefe will also determine the appropriate interest attributable to Donovan's half of the pre-closing tax refund for the purposes of offsetting the total damages owed to Dragados. The parties shall share equally the costs and expenses associated with the Special Master's services, with final allocation to be determined by the Court upon recommendation of the Special Master.
>
> The parties shall make arrangements with Judge Keefe's office to have a teleconference with him no later than 20 days after the filing of this opinion. The Court will enter such orders as are necessary to effectuate his requirements regarding submissions, their contents and length, and the briefing and hearing schedule he and the parties agree upon. The Court further directs that Judge Keefe shall have the discretion to hold a plenary hearing on discrete issues that he may identify. Judge Keefe's final Report and Recommendations shall be filed no later than 60 days after his teleconference with the parties. This deadline may be extended for good cause with the consent of the parties.

[*Id.*]

On September 10, 2013, the Court issued its post-trial opinion, in which it declined to expand Judge Keefe's jurisdiction for the purpose of determining a tax effect offset in Donovan's favor. [D.E. 263 ("Reconsideration Opinion"), p. 17.] By that time, Judge Keefe had, on July 18, 2013, set forth the process by which he would fulfill his charge.

Donovan, months later, seeks to challenge the process and even argues that the Final Pretrial Order ("FPTO") binds Judge Keefe. The process issues that Donovan raises now are brought up far too late: on July 18, 2013, Judge Keefe – consistent with "the framework established in [the] first conference call with counsel for the parties" [Recommendation, p. 4] – directed a motion schedule and set forth his intention to hold a plenary hearing only if he determined genuine factual disputes warranted a hearing. The Court signed off on this proposal, and the parties did not object – and indeed, they proceeded to file their papers per the schedule. Given the significant steps undertaken by Judge Keefe and the parties consistent with D.E. 255, Donovan's objections may be denied on this basis alone.

However, it is not merely the belated nature of Donovan's arguments about the process that render them unpersuasive. They are also contrary to the spirit and intent of the plain language in the Court's June 28, 2013 opinion and its earlier statements on the record about how legal fees would be determined should they be recoverable under the SPA. In this regard, Local Civil Rule 54.2 provides an appropriate framework within which Judge Keefe can address the issue of attorney's fees in a manner consistent with the Court's expectations as it has repeatedly expressed those expectations to the parties.

Consequently, Judge Keefe is correct in stating: "Because this proceeding is guided by the principles of Local Rule 54.2, the case law cited by Donovan in his opposition brief

4

regarding violations of, and amendments to, pre-trial orders is irrelevant." [Recommendation, p. 4.] Contrary to Donovan's position, it was proper for Judge Keefe to proceed under the rule "to the extent that its provisions are applicable to an award of counsel fees stemming from a contract providing for indemnification." [*Id.*] The FPTO is irrelevant now because it has served its purpose. Judge Keefe is not, therefore, "bound" by witness lists in the FPTO, and was within his discretion in refusing to strike the objected-to declarations submitted by Dragados. Donovan's motion that the Court rule otherwise is denied. Specifically, the FPTO does not govern the proceedings before Judge Keefe and Local Civil Rule 54.2 is a proper framework "to the extent that its provisions are applicable to an award of counsel fees stemming from a contract providing for indemnification."

On Donovan's application for tax records, as Judge Keefe noted, determining this issue is outside his charge. [Recommendation, p. 7.] More to the point, the Court said in its post-trial opinion filed September 10, 2013, that it would not expand Judge Keefe's factfinding to include an offset based on a putative tax benefit because unrebutted testimony of Dragados's president established that there was no such tax benefit. [D.E. 263 ("Reconsideration Opinion"), p. 17.] Donovan now argues in its reply brief that this testimony only related to the $22.37 million settlement, and "had nothing to do with the issue of tax benefits realized from the payment of **attorney's fee damages,** which could not be considered by the Court until the attorney's fee damage claim has first been determined." [D.E. 287 ("Reply Br."), p. 14.]

The ruling stands, notwithstanding Donovan's effort to revive the issue as a byproduct of his reinvention of what is at issue. The parties are not litigating "attorney's fee damages" and all that Donovan has suggested this implies – New Jersey substantive law principles, application of the FTPO, a full-dress hearing before Judge Keefe. Rather, they are litigating the reasonableness

5

of the attorney's fees incurred by Dragados which is, as the Court determined, the indemnified party under specific provisions in the SPA.  It is settled that the first portion of attorney's fees Dragados seeks did not lead to tax benefits to be offset against the amount determined by Judge Keefe.  To the extent the Court interprets Donovan's argument in the last pages of its reply brief as applying to tax treatment of the legal fees incurred – and still being incurred – as Dragados defends its rights under the SPA, Judge Keefe cannot determine this future event.  Nor does the SPA contemplate that this set of legal fees falls within a "limitation on indemnification."  Section 10.7(b) of the SPA provides that "[a]ny party receiving a payment . . . shall reimburse the indemnifying party for the amount of any tax benefit actually realized by the indemnified party as a result of the Parent Loss or Shareholder Loss, as applicable, in respect of which such payment is made."  It strains the language to conclude that the tax treatment of legal fees incurred once the bench trial began through the conclusion of the parties' litigation in the federal courts (which if the past is any predictor may be far in the future) remains an open issue under sub-paragraph (b).  The Court has ruled that Donovan must pay the fees, and so there is no quantifiable Parent Loss as to this set of fees.  Put squarely within the context of the SPA, how Donovan deals with the tax effect of fulfilling his obligation to indemnify Dragados is not a Parent Loss.

Therefore, Judge Keefe properly determined that his charge does not include quantifying tax treatment of Dragados's past payment of legal fees in connection with the government investigation and its ultimate settlement with the government.  Because the recoverable legal fees incurred in its ongoing defense of its rights under the SPA are not Parent Losses as contemplated in the SPA, neither Judge Keefe as Special Master nor the Court need address the issue of any purported tax benefits as a "limitation on indemnification" pursuant to § 10.7 of the SPA.

What should not be assumed at this point is that Judge Keefe's interim directions and evidentiary rulings as he continues his duties as Special Master are matters to be brought before the Court by way of objections.  Any implied requirement that Judge Keefe must make interim recommendations instead of rulings within the bounds of his charge soundly defeats what was intended and practiced up until Donovan made its motion on January 2nd.  Judge Keefe's "discretion to hold a plenary hearing on discrete issues that he may identify" means just that.  He has discretion.  He sets the "requirements regarding submissions, their contents and length." [Opinion, p. 48.]  He decides if a plenary hearing is necessary, and he holds the plenary hearing.  He determines the legal fees and costs.  And he issues a final recommendation on the matters the Court has referred to him.  It is at that point that they parties may raise their objections, if any, to his rulings.  *See* Fed. R. Civ. P. 53(f).

## III.  Conclusion

Based on the foregoing, the relief sought by Donovan in his motion is denied in full and an appropriate order will be entered.


Date: February 7, 2014

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.