UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAYMOND J. DONOVAN,

                *Plaintiff*,

   v.

DRAGADOS, S.A.; DRAGADOS INVERSIONES USA, S.L.; and NEWARK REAL ESTATE HOLDINGS, INC.,

                *Defendants*.

Civil No.: 09-409 (KSH) (CLW)

**OPINION AND ORDER**

      This matter comes before the Court by way of the motions of plaintiff Raymond J. Donovan ("Donovan") and defendants Dragados, S.A., Dragados Inversiones USA, S.L., and Newark Real Estate Holdings, Inc. (collectively "Dragados") objecting for various reasons to the report on remand ("Second Report") of Hon. John E. Keefe, Sr. ("Special Master") (D.E. 323), regarding the amount of attorneys' fees and costs to be awarded. (D.E. 324; D.E. 325.) The specific issue addressed here is whether Donovan had a duty under the Stock Purchase Agreement ("SPA") to indemnify Dragados for certain costs, consisting of: (1) $347,157.83 paid to FTI Consulting, Inc. for professional services; (2) $130,000 paid to C2Legal, First Choice Copy, and Ikon for copying services; and (3) $62,962.67 paid to John Ryan for investigative services.[1]

---

[1] In a separate, interlocutory opinion, this Court has addressed objections to the Special Master's initial Report and Recommendation (D.E. 293). (D.E. 315; D.E. 320.) With this opinion, the Court has completed its rulings on objections to the Special Master's reports.

1

The Special Master recommends that the Court deny Dragados's request for indemnification for the first and third categories because in the certification Dragados filed concerning the costs paid to FTI consulting, there was "inadequate support for these charges," and because "Dragados failed to carry its burden to differentiate indemnified costs from non-indemnified costs" with respect to John Ryan's investigative services. (D.E. 323 at 2, 3.) The Special Master recommends granting Dragados's request for indemnification for copying services in the second category because he found them reasonable and related to the criminal investigation that Donovan failed to disclose to Dragados, which failure constituted a breach of the SPA. (*Id.* at 2.) After careful review of the invoices, however, Judge Keefe reduced the $130,000.00 sought for copying services by $509.02 due to a duplicated invoice from Ikon. (*Id.* at 2.) Dragados objects to the Special Master's recommendation to deny indemnification for the costs in the first and third categories, and Donovan objects to the Special Master's recommendation regarding the second.

Dragados relies on the same arguments it advanced in objecting to the Special Master's initial Report, which recommended disallowing fees stemming from the criminal investigation of certain Schiavone Construction Co., LLC ("SCC") employees because Donovan's breach did not cause the criminal investigation of the SCC employees. (D.E. 293.) The Court adopted this recommendation in its February 18, 2015 oral opinion and accompanying order enter on June 29, 2015. (D.E. 315.) The Special Master's Second Report recommends denial of the Jack Ryan investigative costs because Dragados has not demonstrated any allocation between indemnifiable costs relating to "the M/W/DBE aspect of the investigation" and those costs related to the criminal investigation of individual employees. (D.E. 323 at 2-3.) Likewise, the Special Master

found insufficient support to demonstrate the reasonableness of and basis for the professional services provided by FTI Consulting. (*Id.*)

To the extent Dragados seeks reimbursement for costs related to the investigation of individual SCC employees, the Court declines to revisit its prior rulings on this issue. *See Steiert v. Mata Servs., Inc.*, 111 F. Supp. 2d 521, 524 (D.N.J. 2000) (Brotman, J.) (law of the case doctrine); *see also Koppers Co., Inc. ex rel. Beazer East, Inc. v. Certain Underwrites of Lloyd's London*, 993 F. Supp. 358, 364 (W.D. Pa. 1998) (citation and internal quotation marks omitted) ("The doctrine was developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."). Because Dragados did not distinguish costs within these two categories that were unrelated to the investigation of individual SCC employees, the Court is unable to find that the costs may be reimbursed under the SPA. *See Ricci v. Corporate Express of The East, Inc.*, 344 N.J. Super. 39, 48 (App. Div. 2001) (citing *Shuttleworth v. City of Camden*, 258 N.J. Super. 573, 598 n.17 (App. Div.), *certif. denied*, 133 N.J. 429 (N.J. 1992) (where only some fees or costs are reimbursable, party must identify relevant services or explain inability to do so)). The Court therefore adopts the Special Master's recommendations in the Second Report regarding the costs paid to FTI Consulting, Inc. and John Ryan. Dragados's objections to the Special Master's Second Report are denied.

Donovan objects to the Special Master's recommendation to award Dragados $129,481.80 for copying services because the Special Master neglected to reduce the costs by 50% as required by this Court's September 10, 2013 opinion (D.E. 263), and "because there is no record evidence proving that they were Parent Losses"[2] or were incurred as a result of the

---

[2] The SPA defines "Parent Losses" as "any and all actual losses, liabilities, damages, judgments, settlements and expenses . . . which are caused by, arise from or are related to: (i) any breach by [Donovan] of any of [his] representations and warranties contained in or made by or pursuant to Article IV" or the covenants in Article VII. (SPA § 1.1.)

criminal investigation.  Donovan asserts that various invoices "suggest that Dragados is seeking SCC Costs for Bryan Cave work relating to the civil litigation," which would not be Parent Losses.  He further argues that, since this Court found his nondisclosure of the government's investigation into Jobs 506, 510, and 511 to have breached the SPA, costs for copying documents associated with other jobs numbers, such as Job 502, are not reimbursable because they are not related to his breach.

      The Court agrees with Donovan's first objection.  The Court determined in its September 10, 2013 opinion that the SPA's indemnification provision required Donovan to indemnify Dragados for one-half of the attorneys' fees and costs related to the government investigation.  (D.E. 263 at 14.)  The Special Master applied this ruling in his first report, noting that "Donovan is responsible for one-half of the attorney fees and costs incurred by Dragados up to January 29, 2013, . . . but is solely responsible for all fees and costs allowed from that date until date of the entry of final judgment."  (D.E. 293 at 95.)  The Court adopted the Special Master's first report, recommending that division of attorneys' fees and costs in the June 29, 2015 order.  (D.E. 315.)  A review of the invoices from the three firms used by Dragados for copying services shows that they were incurred at the time of the government investigation and prior to January 29, 2013; therefore, Donovan is only liable for 50% of those costs.  The Special Master's recommendation to award Dragados $129,481.80 is modified to reflect that 50% reduction, and Donovan is only liable for $64,740.90 of those costs.

      The Court rejects Donovan's second objection.  The Special Master reviewed the certification and invoices and determined that the invoices were clear and easily understood, that the costs were reasonable, and that the records copied were necessary to respond to the government investigation.  The Court agrees after conducting an independent review of those

invoices and declines to disturb the Special Master's findings based on Donovan's surmise that some costs may be related to the civil litigation.  Specifically with respect to Donovan's objections to copying related to Job 502, the Court acknowledges that Job 502 is not explicitly discussed in the portion of its opinion discussing Donovan's breaches of the SPA.  (D.E. 249 at 28-39)  However, a pragmatic view of the context reveals that these costs are reimbursable.  The government investigation involved Job 502 as well as Jobs 506, 510, and 511.  (D.E. 249 at 16.)  That investigation resulted from SCC's submission of inaccurate M/W/DBE plans and reports, which Donovan misrepresented in section 4.9(a) of the SPA.  (D.E. 249 at 34-39.)  As Judge Keefe stated, "it was necessary for SCC to have copies of the same information that was in the possession of the government" to participate in the investigation and ultimately reach a settlement.  The Court did not diminish the recoverable amount of the settlement fee paid to the government, which resolved Job 502 as well as Jobs 506, 510, and 511 (D.E. 249 at 44, 46), and it declines to do so for copying services needed to respond to the investigation and pursue settlement.  Accordingly, this material is sufficiently related to Donovan's breach to fall within the SPA's definition of "Parent Losses."

Based on the foregoing,

**IT IS** on this 29th day of December, 2015, hereby

**ORDERED** that the objections to the Special Master's Second Report raised by Dragados are denied; and it is further

**ORDERED** that the objections to the Special Master's Second Report raised by Donovan are denied in part and granted in part; and it is further

**ORDERED** that of the grand total of $539,602.30 in costs incurred by Dragados, representing $347,157.83 payable to FTI Consulting, Inc., $129,481.80 payable to C2Legal, First

5

Choice Copy and Ikon, and $62,962.67 payable to John Ryan, Donovan shall reimburse

Dragados for $64,740.90, representing one half of the $129,481.80 incurred for copying services.

/s/ Katharine S. Hayden  
Katharine S. Hayden, U.S.D.J.